**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN CLARK, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| POINT BIOPHARMA GLOBAL INC., ALLAN SILBER, JONATHAN ROSS GOODMAN, RAJESH K. MALIK, YAEL MARGOLIN, DAVID C. LUBNER, BRIDGET MARTELL, NEIL FLESHNER, GERALD HOGUE, and JOE MCCANN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff John Clark ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against POINT Biopharma Global Inc. ("Point" or the "Company") and the members of Point's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the Board's attempt to sell Point to Eli Lilly and Company ("Lilly") (the "Proposed Transaction").

2. On October 2, 2023, Point entered into an Agreement and Plan of Merger ("Merger Agreement") with Lilly and Lilly's wholly owned subsidiary Yosemite Falls Acquisition Corporation ("Purchaser"). Pursuant to the terms of the Merger Agreement, Lilly will acquire

Point in exchange for $12.50 in cash per share of Point common stock, via a tender offer (the "Tender Offer"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on October 13, 2023.

3. On October 13, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. Specifically, the Recommendation Statement, which recommends that Point stockholders tender their shares in the Tender Offer, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview") and (iii) potential conflicts of interest faced by Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Point stockholders need such information in order to make a fully informed decision in connection with the Tender Offer.

5. The Tender Offer is currently scheduled to expire one minute after 11:59 p.m., Eastern time, on November 9, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Point's other shareholders to make an informed decision whether to tender their shares in the Tender Offer. Therefore, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Point common stock.

10. Defendant Point is a Delaware corporation, with its principal executive offices located at 4850 West 78th Street, Indianapolis, Indiana 46268. Point's shares trade on the Nasdaq Capital Market under the ticker symbol "PNT."

11. Defendant Allan Silber has been Executive Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Jonathan Ross Goodman has been a director of the Company at all relevant times.

13. Defendant Rajesh K. Malik has been a director of the Company at all relevant times.

14. Defendant Yael Margolin has been a director of the Company at all relevant times.

15. Defendant David C. Lubner has been a director of the Company at all relevant times.

16. Defendant Bridget Martell has been a director of the Company at all relevant times.

17. Defendant Neil Fleshner has been Chief Medical Officer and a director of the Company at all relevant times.

18. Defendant Gerald Hogue has been a director of the Company at all relevant times.

19. Defendant Joe McCann has been Chief Executive Officer and a director of the Company at all relevant times.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. Point is a globally focused radiopharmaceutical company building a platform for the clinical development and commercialization of radioligands for the treatment of cancer. The Company's product pipeline consists of a late-stage program in prostate cancer, PNT2002, which is currently in a phase 3 trial with topline data expected in the fourth quarter of 2023, as well as a late-stage program in neuroendocrine tumors, PNT2003. As of November 2022, Point has strategic collaboration and exclusive license agreements for the commercialization of its PNT2003 product candidate with Lantheus Holdings Inc. The Company also has several additional programs in earlier stages of clinical and preclinical development.

### The Proposed Transaction

22. On October 3, 2023, Point announced that it had entered into the Proposed Transaction, stating, in relevant part:

> INDIANAPOLIS, Oct. 3, 2023 – Eli Lilly and Company (NYSE: LLY) and POINT Biopharma Global, Inc. (NASDAQ: PNT) today announced a definitive agreement for Lilly to acquire POINT, a radiopharmaceutical company with a pipeline of clinical and preclinical-stage radioligand therapies in development for the treatment of cancer. Radioligand therapy can enable the precise targeting of cancer by linking a radioisotope to a targeting molecule that delivers radiation directly to cancer cells, enabling significant anti-tumor efficacy while limiting the impact to healthy tissue.
>
> POINT's lead programs are in late-phase development. PNT20021 is a prostate-specific membrane antigen (PSMA) targeted radioligand therapy in development

for patients with metastatic castration-resistant prostate cancer (mCRPC) after progression on hormonal treatment. Topline data from this study are expected in the fourth quarter of 2023. PNT20031 is a somatostatin receptor (SSTR) targeted radioligand therapy in development for the treatment of patients with gastroenteropancreatic neuroendocrine tumors (GEP-NETs). Beyond the late-stage clinical pipeline, POINT has several additional programs in earlier stages of clinical and preclinical development. Additionally, POINT operates a 180,000-square-foot radiopharmaceutical manufacturing campus in Indianapolis, as well as a radiopharmaceutical research and development center in Toronto. These facilities will be utilized alongside POINT's extensive network of supply chain partners for sourcing radioisotopes and their precursors.

"Over the past few years, we have seen how well-designed radiopharmaceuticals can demonstrate meaningful results for patients with cancer and rapidly integrate into standards of care, yet the field remains in the early days of the impact it may ultimately deliver," said Jacob Van Naarden President of Loxo@Lilly, the oncology unit of Eli Lilly and Company. "We are excited by the potential of this emerging modality and see the acquisition of POINT as the beginning of our investment in developing multiple meaningful radioligand medicines for hard-to-treat cancers, as we have done in small molecule and biologic oncology drug discovery and development. We look forward to welcoming POINT colleagues to Lilly and working together to build upon their achievements as we develop a pipeline of meaningful new radioligand treatments for patients."

Joe McCann, Ph.D., CEO of POINT added: "The combination of POINT's team, infrastructure and capabilities with Lilly's global resources and experience could significantly accelerate the discovery, development and global access to radiopharmaceuticals. I look forward to a future where patients all over the world can benefit from the new cancer treatment options made possible by the joining of our two companies today."

**Terms of the Agreement**

Lilly will commence a tender offer to acquire all outstanding shares of POINT for a purchase price of $12.50 per share in cash (an aggregate of approximately $1.4 billion) payable at closing. The transaction has been approved by the boards of directors of both companies.

The transaction is not subject to any financing condition and is expected to close near the end of 2023, subject to customary closing conditions, including the tender of a majority of the outstanding shares of POINT's common stock, and license transfer approval from the U.S. Nuclear Regulatory Commission. Following the successful closing of the tender offer, Lilly will acquire any shares of POINT that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

>The purchase price payable at closing represents a premium of approximately 87% to POINT's closing stock price on Oct. 2, 2023, the last trading day before the announcement of the transaction, and 68% to the 30-day volume-weighted average price. POINT's board of directors unanimously recommends that POINT's stockholders tender their shares in the tender offer.
>
>Lilly will determine the accounting treatment of this transaction as a business combination or an asset acquisition, including any related acquired in-process research and development charges, according to Generally Accepted Accounting Principles (GAAP) upon closing. This transaction will thereafter be reflected in Lilly's financial results and financial guidance.
>
>For Lilly, Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Kirkland & Ellis LLP is acting as legal counsel.  For POINT, Centerview Partners LLC is acting as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal counsel.

**The Materially Incomplete and Misleading Recommendation Statement**

23. On October 13, 2023, the Board caused to be filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Recommendation Statement, which recommends that Point stockholders tender their shares in the Tender Offer, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Centerview; and (iii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Projections*

24. The Recommendation Statement fails to disclose material information concerning the financial projections for the Company.

25. For example, the Recommendation Statement fails to disclose a quantification of the assumptions underlying the Company's risk-adjusted projections, including, but not limited to:

>the timing of regulatory approvals and introductions of new products, market acceptance of new products, success of clinical testing (including the topline data results from the SPLASH trial), availability of third-party reimbursement, success

6

>of POINT's ongoing collaboration with Lantheus Holdings, Inc. ("Lantheus") and any other potential collaboration partners with whom POINT may develop or commercialize product candidates, impact of competitive products and pricing, [and] the availability and use of net operating losses[.]

Recommendation Statement at 35-36. The Recommendation Statement also fails to disclose a summary of the Company's non-risk-adjusted projections.

26. In addition, the Recommendation Statement fails to disclose a summary of Company management's "preliminary projections" for the Company which Centerview relied upon in connection with the financial analysis it reviewed at a September 27, 2023, Board meeting (*see id.* at 19), or a quantification of the changes made to the "preliminary projections" to arrive at the "Projections" provided to Centerview for use in connection with its fairness opinion.

27. Moreover, the Recommendation Statement fails to disclose the line items underlying the Company's projected (i) Gross Profit; and (ii) EBIT.

*Material Misrepresentations and/or Omissions Concerning Centerview's Financial Analyses*

28. The Recommendation Statement fails to disclose material information concerning Centerview's financial analyses.

29. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose a quantification of: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the discount rate range of 12.5% to 14.5%; and (iii) the Company's fully-diluted outstanding shares used in the analysis.

30. With respect to Centerview's *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

31. With respect to Centerview's *Premiums Paid Analysis*, the Recommendation Statement fails to disclose: (i) the identities of the transactions analyzed; and (ii) the individual premiums for each transaction.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

33. 32. The Recommendation Statement fails to disclose material information concerning Company insiders' potential conflicts of interest.

33. Specifically, in the October 2, 2023 press release announcing the Proposed Transaction, Jacob Van Naarden, President of Loxo@Lilly, the oncology unit of Lilly, is quoted as stating, "We look forward to welcoming POINT colleagues to Lilly and working together to build upon their achievements[.]" Yet, the Recommendation Statement fails to disclose whether any members of Company management have secured employment with the combined company. Additionally, the Recommendation Statement fails to disclose whether any of Lilly's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation, and the details of any retention-related discussions and negotiations that occurred between the Company's executive officers and Lilly.

34. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information of POINT," "Opinion of POINT's Financial Advisor," "Background of the Merger Agreement," and "Executive Officer and Director Arrangements Following the Merger" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Point will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder

35. Plaintiff repeats all previous allegations as if set forth in full.

36. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Point stockholders to tender their shares in the Tender Offer.

37. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

38. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

39. SEC Rule 14d-9 sets forth, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

40. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

41. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

42. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements

therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

43. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Point, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

46. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement to Point stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. Specifically, the

Recommendation Statement misrepresented and/or omitted material facts concerning the financial projections for the Company, Centerview's financial analyses, and potential conflicts of interest faced by Company insiders.

47. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

48. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of Point within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Point, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be

misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

53. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Point stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Point, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in Point with them from proceeding with, consummating, or closing the Proposed Transaction, including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 24, 2023

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By /s/ *Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

Attorneys for Plaintiff